**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-2470**

---

SCOTTSDALE INSURANCE COMPANY,

Plaintiff - Appellee,

and

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Third Party Plaintiff - Appellee,

versus

LYNNHAVEN INLET FISHING PIER CORPORATION;
C.D.C. ENTERPRISES, INC., t/a Lynnhaven Inlet
Fishing Pier Tackle Shop; KYRUS ENTERPRISES,
INC., d/b/a Lynnhaven Fish House,

Defendants - Appellants.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  F. Bradford Stillman, Magistrate
Judge.  (CA-02-238)

---

Argued:  September 29, 2004          Decided:  November 10, 2004

---

Before WILLIAMS, KING, and DUNCAN, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion.  Judge
Duncan wrote a dissenting opinion.

---

**ARGUED:** C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for
Appellants.  Robert Tayloe Ross, MIDKIFF, MUNCIE & ROSS, P.C.,
Richmond, Virginia, for Appellee Scottsdale Insurance Company.

Jeffrey Allan Wothers, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee Certain Underwriters at Lloyd's, London. **ON BRIEF:** Glenn H. Silver, SILVER & BROWN, Fairfax, Virginia, for Appellants. Robert S. Reverski, Jr., LAW OFFICES OF MICHAEL T. HURD, P.C., Deltaville, Virginia, for Appellee Certain Underwriters at Lloyd's, London.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This appeal stems from an insurance coverage dispute resolved on summary judgment in favor of two insurers. Lynnhaven Inlet Fishing Pier Corporation and C.D.C. Enterprises, Inc., t/a Lynnhaven Inlet Fishing Pier Tackle Shop (collectively "Lynnhaven"), and their restaurant-operating tenant, Kyrus Enterprises, Inc., d/b/a Lynnhaven Fish House ("Kyrus"), appeal the court's award of summary judgment in favor of Scottsdale Insurance Company ("Scottsdale") and Certain Underwriters at Lloyd's, London ("Lloyd's"). Scottsdale initiated this declaratory judgment action in the Eastern District of Virginia against Lynnhaven and Kyrus, asserting that an insurance policy it had issued to Lynnhaven did not provide coverage for damages suffered by the restaurant (the "Fish House"). In turn, Lynnhaven and Kyrus counterclaimed against Scottsdale and filed their own third-party complaint against Lloyd's, seeking declarations that insurance policies issued by Scottsdale and Lloyd's provided coverage for damages suffered at the Fish House.

On cross-motions for summary judgment, the magistrate judge, acting for the district court pursuant to 28 U.S.C. § 636(c), ruled that the damages were not covered by the insurance policies. The court accordingly awarded summary judgment to Scottsdale and Lloyd's. Scottsdale Ins. Co. v. Lynnhaven Inlet Fishing Pier Corp., No. 2:02cv238 (E.D. Va. Oct 31, 2003) (the "Opinion").

3

Lynnhaven and Kyrus have appealed and, as explained below, we reverse and remand.

I.

A.

Lynnhaven owns and operates a fishing pier in Virginia Beach, Virginia, upon which certain enclosed structures, including the Fish House, have been erected.[1] The Fish House restaurant was built on the deck of the pier, above ground. Access to the Fish House, which is leased and operated by Kyrus, is available from beneath the pier. Prior to this dispute, Lynnhaven, in an effort to protect the Fish House's plumbing from freezing, insulated and covered the underside of the restaurant with plywood. The area below the restaurant's floor, consisting of this insulation, plywood, and floor joists, constitutes the Fish House's "subfloor."

During the relevant period, Lynnhaven maintained coverage through an insurance policy issued by Scottsdale in Virginia, specifically Policy No. CPS328957, effective from November 1999 through November 2000 (the "Scottsdale Policy"). Kyrus maintained coverage through an insurance policy issued by Lloyd's in Virginia, specifically Policy No. ROC0443, effective from July 2000 through

---

[1] Because this appeal is from an award of summary judgment, we present the relevant facts in the light most favorable to Lynnhaven and Kyrus, as the insureds and non-moving parties. See Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004).

4

July 2001 (the "Lloyd's Policy"). The relevant terms of these policies are identical. They are both so-called "all risks" policies, covering all risks of direct physical loss unless specifically excluded or limited by the policy terms. Among the excluded causes of loss set forth in Section B(2) of the "Causes of Loss - Special Form" of each policy are: "Collapse, except as provided below in the Additional Coverage for Collapse [Section D]. . . ." The parties agree that the damage to the subfloor of the Fish House would ordinarily be excluded from coverage under this section.

Lynnhaven and Kyrus maintain, however, that they are entitled to coverage under Section D, which provides, in pertinent part: "[The insurer] will pay for direct physical loss or damage to Covered Property, <u>caused by the collapse of a building or any part of a building insured under this Coverage Form</u>, if the collapse is caused by one or more of the following:" listing among other causes, "hidden decay" or the "weight of people or personal property." <u>Id.</u> (emphasis added). Significantly, neither the Scottsdale Policy nor the Lloyd's Policy defines what it means by the term "collapse."

B.

In August 2000, Lynnhaven retained a structural engineering firm to inspect the subfloor of the Fish House. As a result, that firm prepared a report, entitled Pier and Pier Deck Structural

5

Evaluation (the "Report"), which concluded that the subfloor was unsound in certain respects. The Report found that damage to the subfloor had resulted from four causes: (1) condensation from refrigeration units and piping; (2) plumbing leaks from disconnected drainpipes; (3) seepage through the floor from the food preparation area; and (4) moisture trapped by the insulation. The Report also found that some locations of the subfloor were "completely deteriorated," and that "the floor beams are saturated and the wood soft." In October 2000, on the basis of this Report, Lynnhaven filed a claim with its insurer, Scottsdale, seeking coverage for the subfloor damage.

According to the kitchen manager at the Fish House, who is also the restaurant's chef, the floor became spongy and unstable during the first two weeks of November 2000, and several of the floor tiles cracked and popped off. He testified that, during that time period, "the subfloor was like a sand base that was wet and the wood beneath it was rotting." Viewed from below, the subfloor was visibly crumbling and falling apart. As a result, Lynnhaven retained a contractor who temporarily repaired the subfloor in November 2000. Lynnhaven notified Scottsdale that same month that the subfloor of the Fish House had collapsed and that Lynnhaven was proceeding with its claim under Section D of the "Causes of Loss - Special Form" of the Scottsdale Policy.

In March 2001, an engineer engaged by Scottsdale prepared a report on the subfloor problem, concluding that the subfloor had decayed "to the point that it could be penetrated with a screw driver." In August 2001, a wheel on a piece of the Fish House's restaurant equipment, a cooler, sank into the floor, penetrating the subfloor and requiring additional temporary repairs.

In late August 2001, Kyrus gave notice to its insurer, Lloyd's, of its claim under the Lloyd's Policy for the damages sustained by the Fish House's subfloor in mid-November 2000. The Fish House was closed for a short time following Kyrus's notice, and the problem areas of the subfloor were finally repaired on a more permanent basis in September 2001. In October 2001, an adjuster for Lloyd's reported to that insurer's London office that he had found that "a portion of the building had collapsed, which is contrary to what we had previously thought."

In the summary judgment proceedings, Lynnhaven and Kyrus presented two experts who concluded that the subfloor had "collapsed." One of those experts, a structural engineer who had prepared the Report, stated by affidavit that, as his expert litigation report spelled out, the Fish House subfloor had in fact collapsed, in that the subfloor had broken down, fallen apart in a disorganized fashion, or disintegrated. In addition, an insurance claims expert opined by affidavit that the restaurant's "subfloor

7

had collapsed." Lynnhaven and Kyrus also proffered nearly 100 photographs to show the damage sustained by the subfloor.

C.

At the close of discovery in 2002, the parties filed cross-motions for summary judgment. In ruling in favor of Scottsdale and Lloyd's, the district court concluded that summary judgment was appropriate because, applying Virginia law, there was "no evidence that the subfloor broke down completely, fell apart in confused disorganization, or disintegrated." Opinion at 17. According to the court, Lynnhaven and Kyrus failed to present sufficient evidence to demonstrate that a "collapse" had occurred. Opinion at 19. Lynnhaven and Kyrus have appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party. Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). An award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact is one "that might affect the

8

outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute presents a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## III.

Lynnhaven and Kyrus contend that the district court erred in awarding summary judgment to Scottsdale and Lloyd's because there is, under the evidence in the summary judgment record, a genuine issue of material fact as to whether a "collapse" of the subfloor occurred. Scottsdale and Lloyd's, by contrast, maintain that the evidence presented by Lynnhaven and Kyrus does not establish any such "collapse" and that summary judgment was appropriate.

### A.

Significantly, the Supreme Court of Virginia has recently interpreted policy language identical to that found in the Scottsdale and Lloyd's policies in addressing an insurance coverage dispute where "collapse" was an undefined policy term.[2] Lower Chesapeake Assocs. v. Valley Forge Ins. Co., 532 S.E.2d 325, 330 (Va. 2000). In Lower Chesapeake, the court accorded the term

---

[2] In this matter, as found by the magistrate judge, Virginia appears to be the place where the policy was formed, and neither party has contested the application of Virginia law. Consequently, we are obliged, as was the district court, to apply the substantive law of Virginia in our resolution of this dispute. See Seabulk, 377 F.3d at 418-19.

9

"collapse" one of its ordinary and accepted meanings, that is: "'to break down completely: fall apart in confused disorganization: . . . disintegrate.'" Id. (quoting Webster's Third New International Dictionary 443 (1993)), cited with approval in Transcont'l Ins. Co. v. RBMW, Inc., 551 S.E.2d 313, 317 (Va. 2001). Scottsdale and Lloyd's rely on this definition of "collapse" to support their contention that Lynnhaven and Kyrus failed to produce sufficient evidence to satisfy their burden in opposing summary judgment.

This contention, however, overlooks a key and distinguishing aspect of the Lower Chesapeake decision. In that dispute, the Supreme Court of Virginia was able to rely on the trial court's factual findings, made by the lower court after a bench trial. 532 S.E.2d at 330-31 ("The [trial] court's factual finding . . . is central to the resolution of this appeal.").[3] And, according to the Supreme Court of Virginia, whether a "collapse" has occurred, in the context of such a coverage issue, is a question of fact. Id.

_____

[3] In Lower Chesapeake, the Supreme Court of Virginia assessed the trial court's decision under a deferential standard of review. The lower court's verdict would "not be set aside unless it appear[ed] from the evidence that the judgment [was] plainly wrong or without evidence to support it." 532 S.E.2d at 330. Our standard of review, on the other hand, is de novo, and we view the facts and inferences fairly drawn therefrom in the light most favorable to Lynnhaven and Kyrus, as the non-moving parties. Seabulk, 377 F.3d at 418.

The district court, in ruling on summary judgment, appropriately did not make a finding on whether a "collapse" of the Fish House subfloor had occurred; however, the court decided that Lynnhaven and Kyrus had failed to produce sufficient evidence of a "collapse." We are unable to agree with that assessment.

Lynnhaven and Kyrus, in opposing summary judgment, forecast the presentation of evidence by two expert witnesses, a structural engineer and an insurance claims expert, to the effect that the Fish House subfloor had indeed "collapsed," as that term was applied in the Lower Chesapeake decision. See Fed. R. Evid. 704(a) (providing that opinion testimony on ultimate issue of fact is not objectionable on that basis); TFWS, Inc. v. Shaefer, 325 F.3d 234, 241-42 (4th Cir. 2003) (vacating summary judgment award because nonmoving party proffered expert reports demonstrating genuine issue of material fact); see also Ashley Furniture Indus., Inc. v. Sangiacomo N.A., Ltd., 187 F.3d 363, 377 (4th Cir. 1999) ("[I]n many areas, an expert's affidavit will enable the plaintiff to survive summary judgment . . . ."). As we have pointed out, see supra Part I.B., Lynnhaven and Kyrus also presented multiple photographs showing the disintegration of the Fish House subfloor, they proffered testimony from the restaurant's kitchen manager describing the subfloor's disintegration in detail, and they presented a letter from the Lloyd's adjuster that a "portion of the

building had collapsed . . . ." Scottsdale and Lloyd's did not and do not challenge the admissibility of any of this evidence.

In these circumstances, the evidence forecast by Lynnhaven and Kyrus in opposition to summary judgment supports the reasonable inference that a "collapse" of the Fish House subfloor occurred in November 2000, under the terms of the Scottsdale Policy and the Lloyd's Policy. Whether such a "collapse" occurred is determinative of this dispute, and the evidence, viewed in the proper light, creates a triable issue of fact. Summary judgment, therefore, should not have been awarded.

IV.

Pursuant to the foregoing, we reverse the award of summary judgment to Scottsdale and Lloyd's and remand for such other and further proceedings as may be appropriate.

REVERSED AND REMANDED

12

DUNCAN, Circuit Judge, dissenting:

Federal courts sitting in diversity are bound to apply the substantive law of the state in which the court sits, as that law has been applied by the state's highest court. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); see also Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Accordingly, I agree with the majority that the substantive law of Virginia applies to this case. Because, however, I believe that the district court correctly applied Virginia law as it has been interpreted by the Virginia Supreme Court, I respectfully dissent from the majority opinion mandating reversal.

The Virginia Supreme Court holds that "collapse," if not defined elsewhere in an insurance contract, means "to break down completely: fall apart in confused disorganization: . . . disintegrate." Lower Chesapeake Associates v. Valley Forge Ins. Co., 532 S.E.2d 325, 330 (Va. 2000). While the majority correctly notes that Lower Chesapeake was not a summary judgment case, it notes a distinction without a difference. The Virginia Supreme Court in Lower Chesapeake defined "collapse" as a matter of law. Id. (holding that collapse means "to break down completely: fall apart in confused disorganization: . . . disintegrate," without any reference to the factual findings of the district court (alterations in original) (internal quotations omitted)). It further held that the district court applied the correct legal definition of collapse

13

and separately held that the district court's factual finding that the deck at issue in that case met the definition was not clearly erroneous. Id. at 330-31 ("[T]he [trial] court properly applied the ordinary and customary meaning of [collapse] when reaching its conclusion.") In other words, the Virginia Supreme Court did give deference to the district court's factual findings, but not in regards to the definition of collapse. That definition is a legal, not factual, definition and is therefore applicable to this summary judgment proceeding.

Using that definition of "collapse," and taking everything that the plaintiffs posit as true, there is no basis here on which a jury could find that the flooring in question fell apart in confused disorganization. The expert reports and proffered testimony upon which the majority relies to create a dispute of material fact simply state legal conclusions--not factual assertions. See Weinstein's Federal Evidence § 704.04[1] (2004) ("In general, testimony about a legal conclusion, or the legal implications of evidence is inadmissible under Rule 704."). No one disputes that the flooring in question was damaged and required repairs. But no actual evidence, as opposed to mere conclusory statements, demonstrates that the flooring in question came close to "breaking down completely" or "disintegrating" as required by Virginia insurance law.

I would therefore affirm the well reasoned opinion of the district court.[*]

---

[*] As the district court succinctly notes:  "The  . . . evidence submitted to the Court, by both parties, similarly fails to describe damage beyond the clearly established rot, decay, and deterioration.  In their briefs, Lynnhaven and Kyrus equate this deterioration with 'disintegration' and 'collapse' without setting forth any additional facts beyond the undisputed decay and deterioration of the restaurant's subfloor.  Likewise, Millenium's expert report opines that the subfloor 'disintegrated' and 'collapsed,' but provides no objective support for these conclusory statements.  Mere recitation of the words 'disintegration' and 'collapse' is not sufficient to bring the damage within the scope of the ordinary and accepted meaning of 'collapse.'  The Court finds no evidence that the subfloor broke down completely, fell apart in confused disorganization, or disintegrated."  Dist. Ct. Opinion and Order at 17 (E.D. Va. # 2:02cv238, Oct. 31, 2003).